UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JACQUELINE MONTEFERRARIO,

                            Plaintiff,

                                                        Index No.    19-CV-6182

            - against -

                                                        **COMPLAINT**

WELLS FARGO BANK, N.A. and CHARLES KOHLER,              **JURY TRIAL**
                                                        **DEMANDED**
                            Defendants.
------------------------------------------------------------------X

            Plaintiff Jacqueline Monteferrario (hereinafter "Monteferrario" or "Plaintiff"), by her

attorneys, Beranbaum Menken LLP, brings this action against Defendants Wells Fargo Bank,

N.A. (hereinafter "Wells Fargo" or the "Bank") and Charles Kohler (hereinafter "Kohler")

(collectively "Defendants") to remedy discrimination on the basis of gender and retaliation.

                            **PRELIMINARY STATEMENT**

            1.      Plaintiff brings this action, pursuant to Title VII of the Civil Rights Act of 1964

("Title VII"), the New York State Human Rights Law, Executive Law §§ 290 *et seq.*

("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of

New York §§ 8-101 *et seq.* ("NYCHRL"), to remedy Defendants' sex discrimination and

unlawful retaliation.

            2.      Wells Fargo has subjected and continues to subject Monteferrario to intensifying

gender discrimination throughout her more than twelve years of loyal service to the company.

            3.      Not only did Wells Fargo, by and through Plaintiff's manager Kohler, promote

Joseph Uhler ("Uhler") and fail to promote Plaintiff to Head of the Americas for Global Payment

Sales for no reason other than her gender, it also decreased her responsibilities and portfolio size,

essentially demoting her with no opportunity for growth.

4.      After she complained about the discrimination through her attorney on December 14, 2018, Wells Fargo retaliated against her with an "Improvement Needed" performance rating in the "Leadership category, reduced her total annual compensation and, among other things, refused to talk to her about what her role would be with the Bank going forward.

5.      Kohler has continued to go out of his way to marginalize Monteferrario, even going so far as to recently lie to her clients about her.

6.      Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, attorneys' fees, and all other appropriate relief.

## JURISDICTION AND VENUE

7.      Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on March 25, 2019, complaining of the unlawful discriminatory acts herein.

8.      The EEOC issued a Right to Sue letter on May 24, 2019, without deciding on the merits of Plaintiff's claims.

9.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

10.     This Court also has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367.

11.     As Defendant Wells Fargo has an office in and regularly does business within the City of New York, and because the circumstances giving rise to this action occurred within the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (d).

## PARTIES

12.     Plaintiff is a female Wells Fargo executive residing in Franklin Lakes, New Jersey.

13.     At all times relevant to this lawsuit, Plaintiff was an employee of Defendant Wells Fargo under Title VII, the NYSHRL, and the NYCHRL.

14.     Defendant Wells Fargo is an American multinational financial services company headquartered in San Francisco, California, with offices throughout the United States.

15.     At all times relevant to this lawsuit, Defendant Wells Fargo has maintained an office in Manhattan, New York at 150 East 42nd Street, 35th Floor, which was Plaintiff's place of employment.

16.     At all times relevant to this lawsuit, Defendant Wells Fargo was Plaintiff's employer under Title VII, the NYSHRL, and the NYCHRL.

17.     Defendant Charles Kohler, a Bernardsville, New Jersey resident,  is a male Wells Fargo Executive Vice President who at all times relevant to this lawsuit, was an employee of Defendant Wells Fargo who aided and abetted in the discriminatory actions perpetrated by Defendants as alleged herein.

## FACTUAL ALLEGATIONS

### Background and Successful Career at Wells Fargo

18.     Monteferrario came to Wells Fargo in 2006 with extensive sales experience, having held elite positions with NORDEA, ABN AMRO, and Citigroup.

19.     As a Senior Treasury Management Sales Consultant, she received multiple excellent performance ratings every year and many awards for her outstanding sales performance.

20.     It was understood that she was next in line to be the Head of Treasury Management Correspondent Banking.

21.     In 2009, when then-head Albert Williams left the company, Monteferrario was the natural choice for interim team manager.

22.     When she interviewed for the permanent role, she was not offered the position despite actively doing the job and developing a five-year plan for how to grow the business.

23.     She later found out from David Totter, Head of Treasury Management Sales, that she was passed over for last-minute candidate Gavin Tripp ("Tripp"), a male former executive from the trade bank area with no knowledge of correspondent banking.

24.     She continued on undeterred by this disappointment and assisted Tripp in his transition, hiring a replacement for her own position, Sue Morys, who went on to win the prestigious Golden Spoke award for opportunities she took over from Monteferrario.

25.     Monteferrario was assigned a new job in 2009 to Regional Sales Manager (U.S., Canada, Nordica, Germanic and Multilateral U.S. Agency Regions) in the Global Payment Services Group and a promotion in 2011, to National U.S. Sales Manager in the same group.

**Wells Fargo's Gender-Based Discrimination**

26.     Monteferrario came to understand that being passed up for the Treasury Management position was not a one-off incident but rather one of many instances of gender discrimination that she would encounter during her career with the Bank.

27.     In 2012, while she was responsible for overseeing Global Payments Sales for the entire U.S. region, Kohler became the head of Global Sales/Global Payment Services.

4

28.     Kohler forced Monteferrario to hire Catalina Cisneros ("Cisneros") in 2015 as West Coast Regional Sales Manager, working for Monteferrario, despite Cisneros' utter lack of sales experience.

29.     Both Monteferrario's male counterpart, Charles Avaunzaff, and Monteferrario considered Cisneros incompetent for a client-facing position, but Kohler told Monteferrario to "take one for the team" and that it would advance Monteferrario's career.

30.     Not surprisingly, Cisneros turned out to be incompetent and was verbally abusive towards Monteferrario.

31.     When Monteferrario explained these performance issues to Kohler, he wrote her concerns off as a "cat fight," an overtly sexist phrase commonly used to describe a petty dispute between two women.

32.     Plaintiff worked closely with Human Resources for two years, documenting Cisneros' poor performance and verbal abuse, but Kohler continued to minimize Plaintiff's complaints.

33.     Cisneros eventually separated from Wells Fargo in October 2018.

34.     Human Resources ultimately rendered Cisneros "redundant," preventing Monteferrario from hiring a replacement.

35.     Over the years, Kohler's sexist treatment of Monteferrario only worsened.

36.     He constantly made comments that she was "just like his wife" and that he felt sorry that her husband "had to deal with" her.

37.     He personalized his abuse even further by saying things like, "How does Greg deal with you?" and "I feel sorry for Greg."  (Monteferrario's husband's first name is Greg).

38.     Kohler ignored Plaintiff's emails for days on end but immediately responded to those of her male colleagues, which she knew from talking to them.

39.     Also, Kohler initiated all business travel with her male peers but almost never did with Monteferrario.

40.     Because of this failure to spend an appropriate amount of time and attention on Monteferrario as her manager, Kohler truly had little knowledge of her performance and successes.

41.     Kohler criticized her team's performance, but would not allow her to make the necessary management or personnel decisions to correct any problems. Nontheless, Plaintiff's team continued to exceed revenue goals.

42.     In contrast, he allowed male managers in the group to restructure their teams as they liked.

43.     Kohler allowed Monteferrario to speak for only five minutes at the end of each group conference call and constantly interrupted her, while male managers were encouraged and allowed to speak first and without time constraints.

44.     Kohler forced her to give up her office in New York in August 2016, replacing it with a flex cube that was left a mess and often picked over for spare computer parts and office supplies.

45.     When Monteferrario was at the office, Kohler commented that she was never around and that there was a perception that people who do not come regularly to the office because they work from home are not good performers.

46.     He warned Monteferrario that Executive Vice President George Doolittle ("Doolittle") was always watching and believed it was important to be visible.

6

47.     Doolittle often reinforced Kohler's discriminatory behavior.

48.     For example, Doolittle undermined Monteferrario and arranged to meet with Cisneros without telling Monteferrario in the Spring/Summer of 2017.

49.     In a blatant display of gender discrimination, Vlad Popovic ("Popovic") a male Manager of Canada and the Caribbean, worked exclusively from home without comment or criticism from Kohler or Doolittle that he was not "visible" enough.

50.     Despite warning Plaintiff to be "visible," Kohler, in fact, prevented her from doing just that.

51.     On May 7, 2018, Wells Fargo hosted a dinner for clients during a global banking conference in Florida where Monteferrario sat with Kohler.

52.     During the dinner, Samantha Pelosi ("Pelosi") of the Bankers Association for Finance and Trade ("BAFT") told Kohler that BAFT needed people like Monteferrario on its advisory board.

53.     Monteferrario naturally told Pelosi that she was interested, but Kohler publically rejected the idea.

54.     In December 2016, Monteferrario received an unsolicited call from a now former Wells Fargo Human Resources executive who told her that it was common knowledge throughout the company that Kohler treated her worse than her male colleagues.

55.     Monteferrario continued to receive performance ratings stating that she was exceeding expectations and pay and bonus increases commensurate with excellence in sales, yet Kohler scoffed at her whenever she asked about her future with the company.

56.     When Human Resources Representative Andrew Baker referred to Monteferrario at a group meeting as someone who would move up in the company, Kohler blurted out, "Oh, she is not going anywhere" in front of the rest of management.

57.     Clearly, Kohler was a strong proponent of maintaining the proverbial "glass ceiling" to prevent women like Monteferrario from advancing in the workplace.

58.     For example, in June 2017 at a group introductory meeting with Lisa McGeough, Co-Head of Corporate and Investment Banking, Kohler humiliated and degraded Monteferrario when he blared, "who cares?" after she asked a relevant question regarding the changing of the Bank's business in front of the group.

59.     Kohler's campaign of gender discrimination continued in 2018, when he set up a call with Goldman Sachs for himself and Popovic in September, leaving Monteferrario out even though she had been the first one to meet with the potential client in April.

60.     Kohler handed Plaintiff's responsibility for non-bank financial institutions over to Popovic without explanation in December 2018.

61.     This shift in responsibilities was particularly illogical and obviously another act of gender discrimination, as Plaintiff resides and works in the New York metropolitan area—where all of the relevant institutions are located—whereas Popovic lives in Los Angeles.

62.     Kohler also refused to allow Plaintiff to hire a replacement for Cisneros, who, as previously mentioned, finally left the company in October 2018.

63.     Plaintiff therefore had to cover 225 banks with a team of only two people.

**Wells Fargo's Discriminatory Failure to Promote and Ultimate Demotion of Plaintiff**

64.     In August 2018, the Bank posted an opening for Head of Americas in the Global Payment Services group.

8

65.    Plaintiff was undoubtedly the most qualified for the position, with several years of experience in the Latin American, U.S., and Canadian markets, but Kohler suspiciously prevented her from interviewing with anyone but himself.

66.    Showing his inherent gender bias during Plaintiff's interview, Kohler asked, "What do you think the others will think if they have to report to you," implying that the male managers would have a problem reporting to a woman.

67.    As if that were not enough, the proverbial straw that broke the camel's back came in September of 2018, when Kohler told Plaintiff that because the company was "flattening," she would have to fight for a salesperson role within Treasury Management—an even more junior role than the one she was hired into in 2006.

68.    In fact, one of Plaintiff's direct reports, Jeff Levy, would have had a portfolio equal to hers after the demotion.

69.    Despite the "flattening," all of Plaintiff's male peers were given promotions or privileges, including Uhler, who received the Head of the Americas position despite his lack of knowledge or experience with American markets.

**Wells Fargo's Retaliatory Performance Review and Kohler's Escalating Sexual Harassment**

70.    Unable to stand by powerless while Kohler sidelined her, Plaintiff enlisted the help of Beranbaum Menken LLP in December 2018 to draft a letter to Wells Fargo describing the gender-based discrimination she was encountering.

71.    Wells Fargo's response to this letter was at first underwhelming and then blatantly retaliatory.

72.     Six months elapsed after counsel emailed their letter to Wells Fargo complaining of gender discrimination on Plaintiff's behalf without Wells Fargo completing its "investigation."

73.     Plaintiff learned in late December 2018 that Wells Fargo assigned an Employee Relations Consultant to investigate the allegations in the letter.

74.     The Consultant, Denise Dennis ("Dennis"), finally interviewed Plaintiff on January 25, 2019, and told her that the investigation would end in thirty days.

75.     Plaintiff received no further response to her letter until February 12, 2019, approximately two months after counsel sent it, when she received a letter from another Senior Employee Relations Consultant informing her that her "concerns" had been re-assigned to him.

76.     Plaintiff heard nothing more from the Senior Consultant for nearly two weeks, when he emailed her to arrange a telephone interview in which he wanted to discuss the same topics she had already discussed with the first investigator.

77.     To date, Wells Fargo has not informed Monteferrario of the results of its investigation.  Apparently, Dennis' claim that the investigation would end in thirty days was false.

78.     While the new investigator dragged his feet or did nothing, Kohler wasted no time in retaliating against Monteferrario for her complaints.

79.     Kohler rated her leadership skills as needing improvement in her January 7, 2019, performance review.

80.     Considering that she has led her team through five consecutive years of double-digit growth, including while dealing with the loss of a team member,  major breast surgery and substantial setbacks from the surgery,  this "Improvement Needed" rating in leadership was

completely unjustified and an act of retaliation for counsel's December 14, 2018, letter, which asserted claims of gender discrimination.

81.     In order to prop up his "Improvement Needed" rating in leadership category, Kohler asserted three complaints in Plaintiff's performance review.

82.     First, he suggested that she could do more to get upper-level management to travel with her to be "in front of strategic clients."

83.     This criticism is without merit, as Plaintiff complained to Kohler on many occasions that senior management was not interested in accompanying her to see clients.

84.     Plaintiff also asked for Kohler's and Doolittle's travel schedules but never received them.

85.     The only dates she received at all were from Doolittle, whose availability was limited to mid-summer when key individuals were on vacation.

86.     Plaintiff also learned that Doolittle and Kohler routinely contacted her male colleagues with their desired travel dates and customers they would like to meet, whereas Plaintiff, as indicated above, had to reach out to them.

87.     The second complaint Kohler included in Plaintiff's performance review was that she was "more distant" from Global Payment Services, the group in which she currently holds the title of U.S. Sales Manager.

88.     Upon information and belief, Kohler was implying that Plaintiff does not work hard enough or spend enough time at the office.

89.     Plaintiff is constantly working, as the great growth her team has generated over the last five to six years plainly demonstrates.

90.     In addition, Kohler or any other member of management should not suggest she is "more distant" because she often works from home, as Kohler himself provided her with a home office set-up and other similarly situated men frequently work from home and are not written up or accused of being "distant."

91.     In November 2018, Plaintiff had the above mentioned breast surgery.  She took only one day off to recover and then continued working.

92.     Regarding her time spent in the office, recovering from surgery made traveling to the office extremely difficult and painful, and she had to work longer hours to cover the West Coast, because she was understaffed and to make sure no customers left Wells Fargo.

93.     Even so, she did her best to keep in regular contact with senior management, including Kohler and Doolittle.

94.     Indeed, most of what Kohler describes as Plaintiff being "distant" is directly attributable to her male superiors ignoring her.

95.     In addition to failing to contact her about traveling and often ignoring her emails, she was typically the last person in the group allowed to speak in conference calls while Kohler talked over her or impatiently rushed her through her comments.

96.     Plaintiff was also removed from the Extended Leadership Call List, which resulted in her complete ignorance as to when the calls were taking place.

97.     On March 21, 2019, an Extended Leadership call was scheduled, and she appropriately called in and waited 20 minutes for the call to start.  Sometime later in the day, she learned that Ashish Sharma changed the dial-in number without notifying her.  She therefore was unable to participate in the call.

98.     Indeed, Plaintiff only found out she was removed from the call list because a coworker asked her why she was no longer participating in the calls.

99.     Kohler's final criticism of Plaintiff's leadership skills was that he needed her to "remain engaged and open to changing roles."

100.    Upon information and belief, Kohler's critique of Plaintiff's openness to changing roles was his way of telling her to get over being passed up for a promotion and then ultimately demoted.

### Recent Specific Acts of Retaliation

101.    Several more specific acts of retaliation have occurred since Wells Fargo received counsel's December 14, 2018, letter complaining of gender discrimination.

102.    First, as indicated above, her 2018 performance evaluation, conducted by Kohler on January 7, 2019, falsely and in retaliation indicated that her leadership skills needed improvement.

103.    Second, Kohler did not increase her base salary and reduced her bonus by $2,500 and long-term compensation by $10,000, thereby reducing her total annual compensation by $12,500.

104.    Third, Monteferrario's new manager, Uhler, reduced her travel budget almost in half, leaving her with essentially the same travel budget as her junior consultant, yet with the expectation of double-digit growth.

105.    Fourth, on January 8, 2019, Monteferrario went to Kohler's office to discuss an issue that arose in California with a Relationship Manager, and, before she finished explaining what happened, Kohler cut her off and humiliated her, saying, "Maybe you should have Joe handle it."

106.    Fifth, in three-way calls with Plaintiff and Uhler, Kohler continued and continues repeatedly to embarrass her, as he has done for years.

107.    Sixth, and particularly tellingly, on January 24, 2019, Kohler stuck his tongue out at Monteferrario three times (once when she walked by his office, once when she was going to speak to a colleague, and once when he passed by the office she was using on that day).  It was as if he were taunting Plaintiff to let her know that he knew could do whatever he wanted despite her gender discrimination complaints, including engaging in retaliatory behavior, because he was a man and her manager.

108.    Plaintiff reported this tongue incident to Defendant's HR Investigator, Denise Dennis, who appeared very upset by it but did nothing about it as Kohler continued to harass Plaintiff.

109.    Seventh, Kohler said Plaintiff should be "open to changing roles," but that is because he caused her to lose her management role.

110.    Most recently, on June 3, 2019, Plaintiff received an email from one of her Houston-based clients stating that he was at a Global Payments conference and that Kohler told him that Plaintiff did not think the Houston company was important enough for Kohler to visit.

111.    Plaintiff never told Kohler that the Houston-based client was not important enough for him to visit.  Kohler fabricated this statement the same way he fabricated the criticism in her January 2019 performance review—that she wasn't doing enough to get upper-level management to travel with her to be "in front of strategic clients."  On the contrary, Kohler had deemed traveling with Plaintiff unimportant.

14

112.    Despite the discrimination, retaliation, and abhorrent sexually harassing behavior that she has suffered and continues to suffer because she is a woman, Plaintiff remains committed to her job and continues to work hard.

113.    Defendants' discrimination and retaliation have caused Plaintiff to incur economic losses as well as severe emotional distress and damage to her reputation.

## FIRST CAUSE OF ACTION

### Defendant Wells Fargo: Sex Discrimination in Violation of Title VII

114.    Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

115.    Wells Fargo discriminated against Plaintiff by failing to promote her, demoting her, and subjecting her to a hostile work environment because she is a woman.

116.    Wells Fargo acted with malice and reckless indifference to Plaintiff's rights under the anti-discrimination provisions of Title VII.

117.    As a direct and proximate result of Wells Fargo's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

118.    As a direct and proximate result of Wells Fargo's unlawful and discriminatory conduct in violation of the Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

119.    Wells Fargo's unlawful and discriminatory actions constitute willful violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION

### Defendant Wells Fargo: Retaliation in Violation of Title VII

120.    Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

121.    Plaintiff's counsel's December 14, 2019, letter to Wells Fargo complaining of sex-based discrimination constitutes legally protected activity.

122.    Plaintiff's Charge of Discrimination filed with the Equal Employment Opportunity Commission on March 25, 2019, constitutes legally protected activity.

123.    Wells Fargo is liable for retaliation against Plaintiff on the basis of Plaintiff's negative performance review,  reductions in Plaintiff's annual compensation and travel budget, failure to meaningfully and promptly finish its investigation, as well as on the basis of Kohler's escalating sexual harassment and gender discrimination of Plaintiff.

124.    Wells Fargo acted with malice and reckless indifference to Plaintiff's rights under the anti-retaliation provisions of Title VII.

125.    As a direct and proximate result of Wells Fargo's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

126.    As a direct and proximate result of Wells Fargo's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

127.    Wells Fargo's unlawful and retaliatory actions constitute willful violations of Title VII for which Plaintiff is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION

### Defendant Wells Fargo: Sex Discrimination in Violation of the NYSHRL

128.    Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

129.    Wells Fargo discriminated against Plaintiff by failing to promote her, demoting her, and subjecting her to a hostile work environment because she is a woman.

130.    Wells Fargo acted with malice and reckless indifference to Plaintiff's rights under the anti-discrimination provisions of the NYSHRL.

131.    As a direct and proximate result of Wells Fargo's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

132.    As a direct and proximate result of Wells Fargo's unlawful and discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

133.    Wells Fargo's unlawful and discriminatory actions constitute willful violations of the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

## **FOURTH CAUSE OF ACTION**

### **Defendant Wells Fargo: Retaliation in Violation of the NYSHRL**

134.    Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

135.    Plaintiff's counsel's December 14, 2019, letter to Wells Fargo complaining of sex-based discrimination constitutes legally protected activity.

136.    Plaintiff's Charge of Discrimination filed with the Equal Employment Opportunity Commission on March 25, 2019, constitutes legally protected activity.

137.    Wells Fargo is liable for retaliation against Plaintiff on the basis of Plaintiff's negative performance review,  reductions in Plaintiff's annual compensation and travel budget, failure to meaningfully and promptly finish its investigation, as well as on the basis of Kohler's escalating sexual harassment and gender discrimination of Plaintiff.

138.    Wells Fargo acted with malice and reckless indifference to Plaintiff's rights under the anti-retaliation provisions of the NYSHRL.

139.    As a direct and proximate result of Wells Fargo's unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

140.    As a direct and proximate result of Wells Fargo's unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

141.     Wells Fargo's unlawful and retaliatory actions constitute willful violations of the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION

### Defendant Kohler: Aiding and Abetting Violations of the NYSHRL

142.     Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

143.     Wells Fargo discriminated against Plaintiff by failing to promote her, demoting her, and subjecting her to a hostile work environment because she is a woman.

144.     Plaintiff's counsel's December 14, 2019, letter to Wells Fargo complaining of sex-based discrimination constitutes legally protected activity.

145.     Plaintiff's Charge of Discrimination filed with the Equal Employment Opportunity Commission on March 25, 2019, constitutes legally protected activity.

146.     Wells Fargo is liable for retaliation against Plaintiff on the basis of Plaintiff's negative performance review and reductions in Plaintiff's annual compensation and travel budget, as well as on the basis of Kohler's escalating sexual harassment of Plaintiff.

147.     Kohler aided and abetted Wells Fargo's unlawful discrimination and retaliation against Plaintiff by personally engaging in the acts alleged in this Complaint.

148.     Kohler acted with malice and reckless indifference to Plaintiff's rights under the NYSHRL.

149.     As a direct and proximate result of Kohler's unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

150.    As a direct and proximate result of Kohler's unlawful and retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

151.    Kohler's unlawful and retaliatory actions constitute willful violations of the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

### SIXTH CAUSE OF ACTION

**Defendant Wells Fargo: Sex Discrimination in Violation of the NYCHRL**

152.    Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

153.    Wells Fargo discriminated against Plaintiff by failing to promote her, demoting her, and subjecting her to a hostile work environment because she is a woman.

154.    Wells Fargo acted with malice and reckless indifference to Plaintiff's rights under the anti-discrimination provisions of the NYCHRL.

155.    As a direct and proximate result of Wells Fargo's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

156.    As a direct and proximate result of Wells Fargo's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

157.    Wells Fargo's unlawful and discriminatory actions constitute willful violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION

### Defendant Wells Fargo: Retaliation in Violation of the NYCHRL

158.    Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

159.    Plaintiff's counsel's December 14, 2019, letter to Wells Fargo complaining of sex-based discrimination constitutes legally protected activity.

160.    Plaintiff's Charge of Discrimination filed with the Equal Employment Opportunity Commission on March 25, 2019, constitutes legally protected activity.

161.    Wells Fargo is liable for retaliation against Plaintiff on the basis of Plaintiff's negative performance review,  reductions in Plaintiff's annual compensation and travel budget, failure to meaningfully and promptly finish its investigation, as well as on the basis of Kohler's escalating sexual harassment and gender discrimination of Plaintiff.

162.    Wells Fargo acted with malice and reckless indifference to Plaintiff's rights under the anti-retaliation provisions of the NYCHRL.

163.    As a direct and proximate result of Wells Fargo's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation, and benefits.

164.    As a direct and proximate result of Wells Fargo's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

165.    Wells Fargo's unlawful and retaliatory actions constitute willful violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION

### Defendant Kohler: Aiding and Abetting Violations of the NYCHRL

166.    Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

167.    Wells Fargo discriminated against Plaintiff by failing to promote her, demoting her, and subjecting her to a hostile work environment because she is a woman.

168.    Plaintiff's counsel's December 14, 2019, letter to Wells Fargo complaining of sex-based discrimination constitutes legally protected activity.

169.    Plaintiff's Charge of Discrimination filed with the Equal Employment Opportunity Commission on March 25, 2019 constitutes legally protected activity.

170.    Wells Fargo is liable for retaliation against Plaintiff on the basis of Plaintiff's negative performance review and reductions in Plaintiff's annual compensation and travel budget, as well as on the basis of Kohler's escalating sexual harassment of Plaintiff.

171.    Kohler aided and abetted Wells Fargo's unlawful discrimination and retaliation against Plaintiff by personally engaging in the acts complained of in this Complaint.

172.    Kohler acted with malice and reckless indifference to Plaintiff's rights under the anti-retaliation provisions of the NYCHRL.

173.    As a direct and proximate result of Kohler's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or

economic damages, including but not limited to loss of past and future income, compensation, and benefits.

174.    As a direct and proximate result of Kohler's unlawful and discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

175.    Kohler's unlawful and retaliatory actions constitute willful violations of the NYCHRL for which Plaintiff is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

a.    Declaring the acts and practices complained of herein to be violations of Title VII, the NYSHRL, and the NYCHRL;

b.    Enjoining and permanently restraining these violations of law;

c.    Directing Defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

d.    Directing Defendants to place Plaintiff in the position she would have occupied but for Defendant's unlawful conduct, and making her whole for all earnings and other benefits she would have received but for Defendants' unlawful conduct, including but not limited to wages, commissions, other lost benefits, loss of good will, and interest thereon;

e.    Directing Defendants to pay Plaintiff compensatory damages, including damages for her mental anguish, denial of life's pleasures, pain and suffering and humiliation, as well as punitive damages;

     f.       Awarding Plaintiff the costs of this action together with reasonable attorney's fees;

     g.      Granting such other relief as this Court deems necessary and proper.

Dated: New York, New York
       July 2, 2019

By: _____

Bruce E. Menken
BERANBAUM MENKEN LLP
80 Pine Street, 33rd Floor
New York, New York 10005
Tel.: (212) 509-1616
Fax: (212) 509-8088